UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

BRUCE RADEMACHER,            )
                                       )
        Plaintiff,           )
                                       )
v.                                  )        Case No. 4:08CV1193 HEA
                                       )
HBE CORPORATION,           )
                                       )
        Defendant,       )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment, [Doc. No. 23]. Plaintiff has filed his written opposition thereto, to which Defendant has filed a reply. For the reasons set forth below, the Motion is granted.

## Introduction

Plaintiff brought this action alleging employment discrimination under the Uniformed Services Employment and Reemployment Rights Act, (USERRA), 38 U.S.C. §§ 4301, *et seq*. Plaintiff's Complaint alleges that his Air Force Reserve service was a motivating factor for Defendant's termination of his employment in violation of 38 U.S.C. § 4311, (Count I) and that Defendant terminated Plaintiff's employment without cause within 180 days of his return to work after service, in violation of 38 U.S.C. § 43156(c)(2), (Count II).

Defendant has filed a motion for summary judgment on both counts arguing

that there are no material facts in dispute and that it is entitled to judgment as a matter of law.  Plaintiff opposes the motion.

## Facts and Background

Defendant's CEO, Fred Kummer, hired Plaintiff as a Corporate Pilot on April 1, 2001.  At the time of Plaintiff's hire, Kummer knew Plaintiff had served in the Air Force and was a graduate of the Air Force Academy, both of which Kummer considered favorably.  Kummer himself is a veteran of the Korean War.

Plaintiff signed up for the Air Force Reserve in 2003.  He did not discuss this with Kummer beforehand despite the Chief Pilot's suggestion that he do so. Plaintiff chose not to do so because, as he stated to the Chief Pilot, he was not legally required to do so.  Defendant does not have a work rule that requires employees to notify and seek approval prior to enlisting in the military service.

Plaintiff's first request for leave for Reserve duty was in October, 2003. Plaintiff was granted that request and was reinstated to his position when he returned from Reserve duty.  Plaintiff contends, and Kummer denies, that Kummer said to him: "G**D*** it.  I don't like it.  Why didn't you talk to me first.  This better not inconvenience me."

From October, 2003 until his discharge on August 11, 2006, Plaintiff requested military leave approximately once per month.  In each instance, Plaintiff's

request was granted and, upon returning from leave, Plaintiff was reinstated.

Defendant also granted Plaintiff's request for military leave for two months of

Reserve duty from April 14 to June 15, 2006.  When Plaintiff completed this

Reserve duty, he called Gary Bain, the Chief Pilot, and advised him when he would

be returning.  Plaintiff was reinstated.

Defendant's jet requires one Chief Pilot and one subordinate pilot.  Plaintiff

was the subordinate pilot.  Defendant had a list of contract pilots who could fly with

the Chief Pilot during Plaintiff's absences.  Plaintiff would sometimes rearrange his

Reserve schedule if a substitute contract pilot could not be arranged.  Bain does not

remember a single instance in which he had any difficulty scheduling a replacement

pilot due to Plaintiff's Reserve duties.

In January, Plaintiff missed a flight because he did not answer the company

cellular telephone when he was called for a flight.  Plaintiff was in the gym and

testified that his company phone did not ring while he was there.  Kummer was

troubled with Plaintiff's unavailability for that flight.  Kummer expressed a

dissatisfaction with Plaintiff's inability to be reached.  At some point, Kummer told

Plaintiff that he, Kummer, had hired Plaintiff to be available 24/7 and if this became

a problem, he would have to let Plaintiff go.[1]

Plaintiff and Kummer disagreed about flights out of Eagle, Colorado at nighttime when Plaintiff claimed visibility was limited.  The first time this occurred was in September, 2005.  Plaintiff claims that when he explained the visibility problem to Kummer, Kummer told him "If you don't want to work for me, you can quit."  Plaintiff conceded that whether visibility was too limited on that occasion was a matter of disagreement between pilots, including Defendant's Chief Pilot, Gary Bain.

On December 19, 2005, the day before they were scheduled to fly out of Eagle, Colorado, Plaintiff contends Kummer called him and asked him why they could not fly out at night.  Plaintiff testified that when he explained the visibility problem to Kummer, Kummer told him that if he did to want to fly for him, he could quit.  Plaintiff brought an overnight bag for that flight and intended to refuse to make any night flight if Kummer insisted he do so.

Thereafter Plaintiff and Kummer did not have any positive interactions. While Plaintiff was cordial and professional, Plaintiff would avoid positive

---

[1]  The parties dispute the timing of this statement.  Plaintiff contends that it was made in the context of Plaintiff apologizing for not being available the Tuesday following the missed flight. Defendant contends that the statement was possibly made in the context of the missed flight.  This timing dispute is not outcome determinative with respect to the pending motion.

interactions with Kummer and believed him to be not pleasant, belittling and berating of Plaintiff's professionalism.  Kummer had threatened to fire him over several occasions.  Plaintiff didn't see a reason to even smile at Kummer.  Plaintiff told Bain that his reason for unhappiness was because Kummer had threatened to fire him four times over safety issues.  Plaintiff also told Bain that he couldn't work for a guy like Kummer who wouldn't give deference to his experience.  Plaintiff also told Bain that if Kummer would have apologized to him, things would have gotten better but that "you can't beat a dog forever and expect them [sic] not to snap at you."

Plaintiff testified that as of December, 2005, he began making plans to exit Defendant on his own terms.  Plaintiff's family moved to Dallas, Texas in January, 2006.  He had also began looking for employment in Texas.  Plaintiff put his house up for sale in February, 2006.

In late 2005 or early 2006, Plaintiff prepared a letter he intended to send to employees advising why he no longer wanted to work for Defendant.  Plaintiff kept that letter and his digital recorder in his flight bag in anticipation of tendering his resignation once he found another job.  Plaintiff also prepared a letter he intended to send to the FAA, which he also kept in his flight bag to present to Kummer upon his anticipated resignation.

Plaintiff's wife had accepted a position in Dallas in late December or early January, 2006.  Plaintiff told Bain she had not accepted the position.  He did so because he knew Bain would convey that information to Kummer and that Kummer would use that to terminate Plaintiff's employment.  Plaintiff testified that there were too many stories out there of him doing "the exact same thing to other people;" when Kummer found out about employees planning on moving out of the area or taking another job or looking for other jobs, Kummer would terminate their employment.

Defendant's jet is periodically taken out of service for maintenance.  During the times when the jet was out of service for maintenance, Defendant has never laid pilots off work for lack of work.  On at least one occasion, Defendant's pilots flew a leased jet.

The corporate jet which Plaintiff was employed to fly was scheduled to go down for maintenance for up to two months in the fall of 2006.  Kummer testified that had Plaintiff not moved his family to Dallas and put his house on the market to be sold, Plaintiff would have remained employed during the time that the jet was out of service.

Plaintiff recorded a conversation with Bain wherein Plaintiff prompted Bain to say that Kummer did not like Plaintiff's Reserve duty.  Bain stated that Kummer

had never mentioned his dislike for Plaintiff's Reserve duty to him.  While Bain acknowledged that he thought Kummer did not like the Reserve duty, Kummer never said anything to Bain about it.

On August 11, 2006, after the final flight before the jet's scheduled maintenance, Kummer asked to meet with Plaintiff to discuss his employment. Plaintiff recorded that conversation as well.  During the conversation, Kummer advised Plaintiff that he understood Plaintiff had sold his house, moved his family to Texas and was looking for a job there and that with the jet down for maintenance for two months, it made sense to go ahead and terminate his employment at that time.  Kummer began trying to replace Plaintiff's position of co-pilot almost immediately after Plaintiff's termination.

Plaintiff testified that during the two months the jet was scheduled to be down, he intended to undergo surgery on his shoulder and use that time for his recovery.  He also testified that during that time, he intended to spend five days at CAE Simuflite to obtain his recertification to fly.  The certification is necessary for Defendant's insurance carrier.  The certification certificate is valid for one year. Depending on what type of aircraft one flies, this certification may be used for other employers.   Plaintiff also intended to continue his job search.

Plaintiff published a letter after his termination in which he stated that "with

our ongoing disagreements over safety, [my discharge] was inevitable."  In the

letter, Plaintiff objected to Kummer's insistence upon taking flights out of Eagle,

Colorado during the winter months.

Plaintiff filed a complaint with the FAA that he was wrongfully discharged

because of his alleged flight safety concerns.  The FAA never pursued Plaintiff's

complaint.

Plaintiff also consulted private legal counsel but decided not to pursue a

wrongful discharge claim on the basis of his safety complaints because it would

have been an uphill and expensive battle.  He also considered a possible claim that

he was wrongfully discharged because of having been on jury duty a month or two

prior to his discharge.

Plaintiff recorded a conversation with Bain in September or
October, 2006.  Bain was unaware that he was being recorded.  During
that conversation, Plaintiff stated to Bain that he had flight logs all the
way back to 1995.  Further, he stated that there were eleven flights out
of Eagle at least an hour after sunset with no moon.  "Four of those
nine flights you were PIC.[2]  Now frankly, so far what I've given the
FAA, they may slap your wrist.  If I give this to them, it will establish a
pattern of behavior which will end your career and possible criminal
prosecution.  On top of that, there are at least eleven sorties where
there were nine passengers where you and Tom Stone flew.  Okay?
On top of that, I also have evidence--remember that flight into
Michigan where the VRD minimums were 750--you broke out at 400
feet because that's what the overcast deck was.  I am prepared to send

---

[2]  The Court presumes this means "Pilot in Charge" or "Pilot in Command."

all of that information to the FAA on Monday.  Do you understand?

Also during that conversation, Bain told Plaintiff that while Kummer may not have initially approved of Plaintiff's decision to join the Air Force Reserve without first discussing it with Kummer, Bain did not believe it negatively influenced Kummer toward Plaintiff and did not believe it had anything to do with Kummer's decision to terminate Plaintiff's employment.  Bain also stated that he didn't think Kummer minded at all that Plaintiff was gone for two months on Reserve duty, and that the other pilot was a lot more pleasant. Kummer never said anything to Bain about Plaintiff's two month Reserve duty.

After Plaintiff's discharge, Defendant interviewed and hired John Palumbo to replace him.  Palumbo had flown for Defendant as a contract pilot for the past 20 years.

Defendant's third party administrator for unemployment compensation, UC Express (f/k/a Talx), had recorded in their internal records Plaintiff was terminated for reason code 5100, "unsatisfactory work performance."  On August 23, 2006, Jan Ryan in Defendant's Personnel Department, corrected Defendant's third party administrator's understanding by sending a fax indicating instead a termination code of 9011, "no protest per employer."  The third party administrator provided Defendant with only two termination codes of not protesting unemployment

compensation for involuntary terminations--5100 and 9100.  For internal purposes,

Talx had apparently recorded the 5100, which is for a termination for work

performance, instead of 9100, which is an unspecified termination but which

indicates employer does not contest unemployment compensation benefits.

## Discussion

## Standard of Review

The standard for summary judgment is well settled.  In determining whether

summary judgment should issue, the Court must view the facts and inferences from

the facts in the light most favorable to the nonmoving party.  *Matsushita Elec.*

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); "Summary

judgment is appropriate when the record, viewed in the light most favorable to the

non-moving party, demonstrates that there is no genuine issue of material fact and

the moving party is entitled to judgment as a matter of law."  *Myers v. Lutsen Mtns.*

*Corp.*, 587 F.3d 891, 893 (8th Cir.2009). If a nonmoving party has failed to

establish the existence of an element of that party's claim, summary judgment is

appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)" *Cole v.*

*Homier Distributing Co., Inc.,* 2010 WL 1171741, 6 (8th Cir. 2010).  The moving

party has the burden to establish both the absence of a genuine issue of material fact

and that it is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex,* 477 U.S. at 322;

*Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996).  Once the

moving party has met this burden, the nonmoving party may not rest on the

allegations in his pleadings but by affidavit or other evidence must set forth specific

facts showing that a genuine issue of material fact exists.  Fed.R.Civ.P. 56(e);

*Anderson* 477 U.S. at 256;  *Littrell ,* 459 F.3d at 921.  "The party opposing

summary judgment may not rest on the allegations in its pleadings; it must 'set forth

specific facts showing that there is a genuine issue for trial.'"  *United of Omaha Life*

*Ins. Co. v. Honea,* 458 F.3d 788, 791 (8th Cir.2006) (quoting Fed.R.Civ.P. 56(e));

"'Only disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment.' *Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)."  *Hitt v. Harsco Corp.,* 356 F.3d

920, 923 (8th Cir. 2004).  An issue of fact is genuine when "a reasonable jury could

return a verdict for the nonmoving party" on the question.  *Anderson,* 477 U.S. at

248; *Woods,* 409 F.3d at 990.  To survive a motion for summary judgment, the

"nonmoving party must 'substantiate his allegations with sufficient probative

evidence [that] would permit a finding in [his] favor based on more than mere

speculation, conjecture, or fantasy.' *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d

237, 241 (8th Cir. 1995)(quotation omitted)." *Putman v. Unity Health System*, 348

F.3d 732, 733-34 (8th Cir. 2003).  A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor.  *Wilson v. Int'l Bus. Mach. Corp.,* 62 F.3d 237, 241 (8th Cir.1995); *Smith v. International Paper Co.*, 523 F.3d 845, 848 (8th Cir. 2008). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably  find for the plaintiff." *Anderson,* 477 U.S. 242 at 252; *Davidson & Associates v. Jung* 422 F.3d 630, 638 (8th Cir. 2005);  *Smith*, 523 F.3d at 848.

Summary Judgment will be granted when, viewing the evidence in the light most favorable to the nonmoving party and giving the nonmoving party the benefit of all reasonable inferences, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *Samuels v. Kansas City Mo. Sch. Dist.,* 437 F.3d 797, 801 (8th Cir. 2006).  "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin,* 483 F.3d 516, 526-7(8th Cir. 2007). "Simply referencing the complaint, or alleging that a fact is otherwise, is insufficient to show there is a genuine issue for trial." *Kountze ex rel. Hitchcock Foundation v. Gaines*, 536 F.3d 813, 817 (8th Cir.

2008). While the moving party bears "the initial burden of informing the district court of the basis for its motion, and identifying those portions of the pleadings," the discovery, disclosure materials and affidavits "which it believes demonstrate the absence of a genuine issue of material fact," *Celotex,* 477 U.S. at 323 it is incumbent on the party with the burden of proof at trial to present sufficient evidence to establish the elements essential to its claims. See Celotex, 477 U.S. at 322-23.  Thus, Plaintiff, even though the non-moving party for summary-judgment purposes, "must still 'present[ ] evidence sufficiently supporting the disputed material facts [such] that a reasonable jury could return a verdict in [its] favor.' " *Pope v. ESA Servs., Inc.*, 406 F.3d 1001, 1003-04 (8th Cir.2005) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir.1992)).

*Glorvigen v. Cirrus Design Corp.,* 581 F.3d 737, 742 -743 (8th Cir. 2009).

### Uniformed Services Employment and Reemployment Rights Act

The "[USERRA] was enacted in an attempt to prevent employment discrimination based upon military service." *Clegg v. Arkansas Dep't of Corrections*, 496 F.3d 922, 930 (8th Cir.2007), citing *Maxfield v. Cintas Corp.*, 427 F.3d 544, 551 (8th Cir.2005)(*Maxfield I*)("An employer violates USERRA when a person's membership in the uniformed services is a motivating factor in the

- 13 -

employer's action, unless the employer can prove that the action would have been

taken in the absence of such membership or obligation for service." *Maxfield v.*

*Cintas Corp.*, 563 F.3d 691, 694 (8th Cir.2009), quoting *Maxfield I.* 427 F.3d at

551. "The employee must initially show his military status was a motivating or

substantial factor in an adverse employment decision, but an employer can defeat

the claim by proving 'by a preponderance of evidence, that the action would have

been taken despite the protected status.'" *Id.*, quoting *Maxfield I,* 427 F.3d at 551.

Plaintiff alleges violations of Sections 4311 and 4316, of USERRA.

Section 4311 applies after reemployment has occurred.  It prohibits discrimination

with respect to any benefit of employment against persons who serve in the armed

services after they return from a deployment and are reemployed. *Clegg,*  496 F.3d

at 930.  Section 4316 also protect the member after reemployment occurs.  *Id.*

Section 4311 provides:

(a) A person who is a member of, applies to be a member of, performs,
has performed, applies to perform, or has an obligation to perform
service in a uniformed service shall not be denied initial employment,
reemployment, retention in employment, promotion, or any benefit of
employment by an employer on the basis of that membership,
application for service, or obligation.

(c) An employer shall be considered to have engaged in actions
prohibited-(1) under subsection (a), if the person's membership,
application for membership, service, application for service, or
obligation for service in the uniformed services is a motivating factor in

the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service.

Unlike the *McDonnell Douglas* framework (which is used to analyze Title VII claims), the procedural framework and evidentiary burdens set out in section 4311 shift the burden of persuasion, as well as production, to the employer. *Maxfield I*, 427 at 551, quoting *Gagnon v. Sprint Corp*., 284 F.3d 839, 854 (8th Cir.2002), abrogated on other grounds, *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). "Under the USERRA, an employee must make "'an initial showing * * * that military status was at least a motivating factor or substantial factor in the [employer's] action.'" *Id*., quoting *Gagnon*, 284 F.3d at 854, quoting, in turn, *Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1014 (Fed.Cir.2001). "If the employee makes such a showing, '"the [employer] must prove, by a preponderance of evidence, that the action would have been taken despite the protected status."'" *Id* ., citing *Gagnon* 284 at 854, quoting, in turn, *Sheehan*, 240 F.3d at 1014.

"In determining whether the employee has proven that his protected status was part of the motivation for the [employer's] conduct, all record evidence may be considered, including [its] explanation for the action taken." *Maxfield I*, 427 at

552, quoting *Sheehan*, 240 F.3d at 1014. "For example, 'discriminatory motivation under the USERRA may reasonably be inferred from * * * proximity in time between the employee's military activity and the adverse employment action [and] inconsistencies between the proffered reason and the other actions of the employer." *Maxfield I* 427 F.3d at 552, quoting *Sheehan,* 240 F.3d at 1014. "Circumstantial evidence will often be a factor in these cases, for discrimination is seldom open or notorious." *Sheehan*, 240 F.3d at 1014.

Plaintiff cannot rely on proximity in time between his military activity and his termination. Plaintiff joined the Air Force Reserves almost three years prior to his discharge. Defendant knew of his membership during that time. Whenever Plaintiff requested leave, he was granted leave, and he was promptly reemployed after he had completed his Reserve duty.

Likewise, Plaintiff may not rely on inconsistencies between the proffered reason he was discharged and other actions of Defendant. Plaintiff and Kummer had had disagreements regarding whether to fly at night out of Eagle, Colorado. Plaintiff and Kummer both thought the other was unpleasant. Plaintiff was afraid to disclose that his wife had taken the position in Dallas, Texas, and that if Kummer found out he was looking for other employment, he would be fired. Upon learning of Plaintiff's intent to move to Dallas, Kummer terminated Plaintiff's employment.

- 16 -

Kummer determined that it made sense to end Plaintiff's employment while the jet was down.

Plaintiff's case is based on his belief that he was discharged because of his Reserve status. He attempts to establish this through remarks made by Kummer when he found out Plaintiff had joined the Air Force Reserves, and his version of when the 24/7 comment by Kummer was made. These comments, however, were stray remarks that are insufficient to establish Plaintiff's reserve status was a motivating factor in his discharge. They had no bearing on Plaintiff's continued employment or his ultimate termination. Plaintiff, as previously noted, was continuously employed even after Kummer may have voiced his unhappiness with Plaintiff's actions in joining the Reserves. Likewise, Plaintiff's employment was not effected even if Kummer made the 24/7 statement in relation to Plaintiff's Reserve related absence. Significantly, when "invited" to affirm Kummer's dislike for Plaintiff's Reserve status by Plaintiff in his recorded conversation with Bain, Bain reaffirmed that Kummer didn't even mention Plaintiff's Reserve membership to Bain in any way. While Plaintiff contends that another employee told Plaintiff how Kummer had "ranted and raved" about Plaintiff being on Reserve duty, there is no independent evidence of such. There is insufficient evidence from which a jury could find that Kummer was motivated by Plaintiff's military status. Simply

claiming that his military service was a motivating factor in the termination of

Plaintiff's employment does not make it so. Plaintiff's unsupported subjective self-

serving claims notwithstanding. Plaintiff has not met his burden of showing that his

military service was a motivating factor in the elimination of his job. See, *King v.*

*U.S.*, 553 F.3d 1156, 1159 (8th Cir. 2009); *Ramlet v. E.F. Johnson Co.*, 507 F.3d

1149, 1152-3 (8th Cir. 2007); *Quick v. Wal-Mart Stores, Inc.*, 441 F.3d 606, 609-10

(8th Cir. 2006).

Furthermore, Defendant has shown that it would have terminated Plaintiff's

employment even if he was not a member of the Air Force Reserves. Kummer

discovered that Plaintiff was looking for other employment. It made sense to

Kummer to resolve the issue of Plaintiff's employment at the time the jet was

scheduled for maintenance because he, Kummer, thought Plaintiff had already

effectively moved on from his employment with Defendant. Defendant is therefore

entitled to summary judgment on Count I.

Count II is brought pursuant to Section 4316(c). Section 4316(c) temporarily

alters the at-will status of employees who return from military service. This

subsection provides:

A person who is reemployed by an employer under this chapter shall

not be discharged from such employment, except for cause * * *

- 18 -

within one year after the date of such reemployment, if the person's period of service before the reemployment was more than 180 days.

Title 38 U.S.C. § 4316(c); see, *Francis v. Booz, Allen & Hamilton, Inc.,* 452 F.3d 299, 308 (4th Cir.2006).  The employer bears the burden of proving that it was reasonable to discharge the USERRA-covered employee for his conduct, and that the employee had express or implied notice that the conduct would constitute cause for discharge. *Id.,* citing 20 C.F.R. § 1002.248(a); *Hillman v. Arkansas Highway & Transportation Dept.,* 39 F.3d 197, 200 (8th Cir.1994)("The reasonableness of the discharge is determined by asking whether it was fair to discharge the veteran because of his conduct and whether the veteran had notice, express or fairly implied, that such conduct would be grounds for discharge."), citing *Carter v. United States*, 407 F.2d 1238, 1244-45 (D.C.Cir.1968); see also, *Jordan v. Jones*, 84 F.3d 729, 732 (5th Cir.1996), cert. denied *sub nom. Jordan v. Valdez*, 519 U.S. 976 (1996).

Kummer ended Plaintiff's employment because he discovered Plaintiff's family had moved to Texas, Plaintiff was looking for another job and had his house on the market to be sold.  The jet was scheduled to be down for two months during which time, Defendant was going to pay Plaintiff and had no duties for Plaintiff to perform. Rather than retain Plaintiff, whom Kummer perceived to have decided he was not going to work for Defendant any longer than he had to while he was finding another job,

Kummer ended Plaintiff's employment before the down time began.  It was clearly

reasonable, and business wise, for Defendant, through Kummer, to discharge Plaintiff

at that time, rather than pay Plaintiff while Plaintiff was actively looking for a job in

Texas.  Despite Plaintiff's protestations to the contrary, this reason for Plaintiff's

discharge has never varied.  Elementarily speaking, Plaintiff's discharge was the result

of Plaintiff's own doing.  He was actively looking for a way out.  While Plaintiff may

be unhappy that his plan was foiled by the discovery, such disappointment is

insufficient to give rise to genuine issues of material fact to withstand challenge under

Rule 56 of the Federal Rules of Civil Procedure.

Likewise, Plaintiff had implied, if not express, notice that his actions would

result in his discharge.  The very reason Plaintiff did not tell Kummer about his

situation was that he was afraid Kummer would fire him.  Plaintiff even went so far as

to lie to Bain about his wife's acceptance of the position in Dallas because he was

afraid Bain would tell Kummer and Kummer in turn would fire him.  Plaintiff cannot

create any issues of material fact with respect to the notice element of Section 4316(c).

Defendant has met its burden of establishing that Plaintiff's discharge was reasonable

and that Plaintiff had sufficient notice that his actions would result in discharge.

Summary judgment in favor of Defendant is therefore proper.

Plaintiff goes to great lengths to establish that Kummer's discharge of Plaintiff

was not in accordance with the usual procedures taken regarding discharge of other employees. This discussion fails to create a genuine issue of material fact with respect to either Defendant's motivations for discharging Plaintiff or Defendant's cause for firing him. Nothing in the statute, or for that matter, Defendant's internal procedure *requires* Defendant take certain actions prior to discharging an employee. Plaintiff cannot create issues where none exist.

### Conclusion

Plaintiff's military membership was not a motivating factor in Defendant's decision to terminate Plaintiff's employment. As such, it was not contrary to 38 U.S.C. § 4311. Moreover, Defendant has established that Plaintiff would have been discharged even *had* his military service been a motivating factor.

Defendant has establish that it had cause for terminating the employment of Plaintiff and that Plaintiff had sufficient notice that his actions could result in termination of his employment. Plaintiff cannot, therefore establish a violation of 38 U.S.C. § 4316(c).

Defendant is entitled to judgment as a matter of law on both counts of Plaintiff's complaint.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment,

[Doc.23] is **GRANTED**.

A separate judgment is entered this same date.

Dated this 5th day of April, 2010.


_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE